MiNSHAi/r,, J.
Both parties in this case claim title to the lands in question from the state to whom they belonged in 1858, as a part of its canal lands. In that year Charles Elliott purchased the- lands for a valuable consideration, and in 1854, received a deed therefor, executed by the Governor in due form, which, as required by law, was duly recorded in the record of deeds of canal lands kept in the office of the Auditor of State. It was not, however, recorded in the recorder’s office of the county of Paulding, where the land is situate, until in 1875. The plaintiff derives his title from Elliott by a deed duly executed. In 1871, Webster and Wise, *398 without actual notice of the deed to Elliott, for a valuable consideration purchased the same lands from the state and received a deed therefor in due form of law. Their purchase was made under the provisions of an act passed April 5, 1866, providing “for the sale of the remaining canal lands belonging to the state.” 63 Ohio Raws 140.
The principal question in the case is, as to the effect of the omission of Elliott, or his grantee, to cause the deed executed to him for the land in 1854, to be recorded in the office of the recorder of Paulding county, until after the purchase had been made by Webster and Wise. The defendant claims that under the provisions of our recording act the deed to Elliott is of no avail against him, as he and Wise are bona fide purchasers having at the time they made their purchase no knowledge of the existence of the former deed.
We do not adopt this view. Whether the provisions of the act providing for the recording of deeds and the effect of an omission to do so, in terms applies to a deed made by the state, need not be considered, as special provision is made by the act of April 16,1857, (54 Ohio Raws, 160), for the recording of all deeds made by the state, in the auditor’s office; and though this act was passed a few years subsequent to the sale to Elliott, it is made applicable by its terms to any lands, that “have heretofore been sold or may hereafter be sold; ” and this deed was recorded in the auditor’s office in the record of canal lands as found by the court. This special provision for the recording of deeds made by the state, must, agreeably to the decision in Betz v. Snyder, 48 Ohio St. 492, be regarded as superseding the general provision on the subject. It was there held that the deed of an insolvent assignor for the benefit of creditors, takes effect and is notice to all persons from the time it is filed in the office of the probate judge, without having been recorded in the office of the recorder of the county, on the ground “that special statutory provisions for particular cases, operate as exceptions to general provisions which might include the particular case.” Hence, a deed from the state, executed and recorded as prescribed by this statute, necessarily becomes notice to all persons, that the land described in it has been sold and con *399 veyed to a purchaser; and no one, unless by his negligence, can be a subsequent purchaser without notice. The rule is a convenient one. All purchases of lands from the state must be made through the auditor’s office. It is therefore not only convenient but proper, that evidence as to title and power to sell, should be sought for and furnished in the department where the individual, in acquiring lands from the state, must transact the business.
Again the act of April 5, 1866, under which the sale was made to Webster and Wise in 1871, simply conferred power on the auditor to sell “the remaining canal lands belonging to the state.” (63 Ohio Raws 140). In Roseberry v. Hollister, 4 Ohio St. 297, it was held that, where an agent of the state, under a power to sell any of “the unsold lands” belonging to it, sold to a third person a lot that had previously been sold to another, a deed made in execution of the power was void for want of power to make the sale, although the subsequent purchaser had no notice of the purchase and rights of the first one. KeNNON, J. said, in the disposing of the case: “ The authority of the state’s agent depended on the fact of whether he had made a previous sale of the lot. If he had not, then he could sell to the defendant; if he had, then he was not authorized to sell. The superintendent having, according to the authority conferred on him by the state, offered at public auction, and sold, this very lot, he had no authority from the state to afterwards sell the same lot, at private or public sale, to anybody; and, therefore, the second sale was wholly unauthorized by law.” The provisions of the registration act were insisted on by the second purchaser, but the court held that it had no application to the case, and that the doctrine of caveat emptor applied to him with all its force. In that case the first purchaser had no deed at the time of the sale to the second purchaser, he had simply paid for the land and received a certificate of purchase; and if the principal of caveat emptor, applied in that case, for an equal if not stronger reason, it applies in this,, where the first purchaser had not only paid, but had received and held a deed, for his land. The principle seems to be, that in making purchases from the state, the individual is bound to inquire for *400 himself as to the title of the state, and its power to convey; and can acquire no rights against a previous purchaser of the same lands from the state. He stands in the shoes of the state and takes such title as it had power and right to convey. In Governeur's Heirs v. Robertson, 11 Wheat, 332, it is said. “The state never intends to grant the lands of another; and where the grantee is ignorant of the previous patent, the maxim, caveat emptor, is emphatically applicable to this species of contract.” Again, in Best v. Polk, 18 Wal. 112, it was said by Justice Davis, in delivering the opinion, “ It has repeatedly been held by this court that a patent is void, which attempts to convey lands that have been “previously granted, reserved from sale, or appropriated.” Stoddard v. Chambers, 2 How., 284; United States v. Arredondo, 6 Pet., 728; Richart v. Felps, 6 Wal. 160. And in New Orleans v. United States, 10 Pet., 731, it is said. “ It would be a dangerous doctrine to consider the issuing of a grant as conclusive evidence of right in the power which issued it. On its face it is conclusive; and cannot be controverted; but if the thing granted was not in the grantor, no right passes to the grantee. A grant has been frequently issued by the United States for land which had been previously granted, and the second grant has been held to be inoperative.”
That such is the policy of this state, seems supported by the fact that, to such persons as purchase lands of the state, and the title fails by reason of a previons sale to some one else, the legislature has provided indemnity. Thus by the act passed January 29, 1844, (42 Ohio Daws 6), it is provided, that where a tract of land has been purchased from the state, the purchaser, on making proof to the Auditor of State that the same was erroneously sold, and surrendering the deed therefor, is entitled to a warrant on the treasury for the money paid with interest at six per cent, from the date of the illegal sale. And this act is still in force. 2 Giauque Statutes, pp. 2380-1. Before this, in 1834, an act was passed, relating directly to the Miami canal lands. It provided that all persons who have or may hereafter purchase land at the office for the sale of the Miami canal land, “when the same had been previously sold and conveyed,” *401 should be entitled to receive the amount which the purchaser had paid, out of the state treasury on the warrant of the auditor. 1, Curwen, Stat., 115. These provisions consist with the justice of the state. But, it will be observed, that no provision is made, applicable to the case of the previous purchaser, should he loose by reason of a sale made to a second purchaser by the state. If the claim of the latter is allowed to prevail, the first purchaser is without any remedy; and yet the loss must résult as a direct consequence of the wrongful act of the agents of the state in selling his land to another person. This would be contrary to the justice of the state, and was, therefore, not intended. Injustice to either is avoided by providing an indemnity to the one who gets no title from the state, as has been done. In such case the first purchaser retains his land and the justice of the state is satisfied.
/ It is therefor clear that, upon the facts found by the common pleas, it erred in rendering judgment for the defendant below; and that the circuit court did not err in reversing the judgment of the common pleas and in rendering judgment for the plaintiff for the possession of the land.

Jiidgment affirmed.